Good morning. May it please this Court, my name is Michael Kars, and I represent Mr. Mitchell and, of course, Mr. Peckham in the subsequent case. And given the Court's direction, I will not ask for rebuttal and leave any follow-up questions for the next part of the case, because they are, in my opinion, identical in terms of the law, just some minor factual differences. Basically, I see this case in terms of statute of limitation, tolling and accrual occurring in two parts. First part being, of course, is when does it accrue? And then, of course, is does the Washington statute, criminal statute that permits tolling for pretrial detainees, apply to someone who is at the Special Commitment Center who has not been yet civilly committed? This Court has asked for supplemental briefing on a couple of various cases and principles, and I will address those first. The question of how a habeas or Peck v. Humphrey-type case as goes against a 1983-type case has always been a point of tension in the Federal courts. And I think that this circuit has tried to deal with it, along with a couple others, in situations involving infraction hearings, good times, and has distinguished them from situations involving challenges to criminal convictions. Now, these cases, this case and the following case, involve infraction or lots of good time. So looking at Manette v. Small, which this Court asked us to look at, it is clear that for challenging an infraction after release, that it is permissible to file a 1983 cause of action, and the Court subsequently affirmed this in, I think it's Guerrero v. Gates, on a footnote, making sure in that it is still applicable to this type of situation. First, the government didn't raise the heck was somewhat discussed in the district court, but not raised here until we raised it. Is heck in any sense jurisdictional? Is there any reason we should reach it if the government isn't arguing it and still doesn't, isn't arguing it, actually? Well, that's an awfully good question, because I have gone around in my head on that very issue, and it's my opinion that heck is applicable to challenges to criminal convictions, such that as Guerrero v. Gates, the situation was heck was applicable because the 1983 lawsuit that was filed was challenging the conviction. And this seems to be distinguishing between the two very different types of situations, good time versus criminal conviction. And that is the situation here. Doesn't heck refer to conviction and sentence? It does, but I think what we're looking at is, I'm trying to put this in context of what the Supreme Court has given us guidance to, and I just don't see that, from my understanding, that heck would apply. Now, I think that's what I was asking you. I was asking you, assuming it would apply had it been raised. It wasn't raised in the briefs before us by the defendant who would have raised it. Yes. Is there any sort of hierarchy of decision that would require us to reach the issue, although not raised? I guess, could you rephrase the question, please? Is there any reason we – certain issues are jurisdictional, and we need to raise them or decide them. In this instance, the government didn't – not only didn't raise heck, but even now, after we asked them for a briefing, is indicating that they don't think we should decide the heck issue. Is there any reason we need to decide the heck issue when the defendant didn't raise it? It's my opinion that we don't need to decide the heck issue, that heck is not applicable anyway. I understand that. I'm asking you, assuming – we don't know the answer to that yet. Do we need to address it? Do we need to decide it? I think that, from my understanding, is that, first off, he wasn't in custody. So I think that, according to the statute, 2254, I don't think that the court would address it. All right. It sounds like I'm missing that point. I have my second question. Okay. My second question is, we have Nanette, we have Guerrero. They came out opposite ways. What's the difference between them, and why does this case fit into Nanette and not Guerrero? What I see the difference is the fact that Guerrero seemed to point directly at the challenge to the criminal conviction, and it left open the infraction of Nanette, and did not – and mentioned it, I believe, in a footnote that, indeed, Nanette was still good law for infractions. And that's the difference. And I think it's because the concept of heck as applied in Guerrero was not applied – was applied only to the criminal challenge, and that infractions and such were not considered applicable. And that's why I think that Nanette's still good law, and Guerrero just confirms that for this type of case. And I think that if you take a look at – I mean, for example, Apelli had made the argument that because Mr. Nanette had filed a 1983 action while still incarcerated, that that's a particular type of case. But that particular issue in and of itself goes against the Harvey V. Waldron, which would then – because Harvey V. Waldron does not require that. It's just a question of accrual. It doesn't require you to file some sort of civil action that isn't even applicable because you're incarcerated, and you would have to challenge it through, in our state, a personal restraint petition. And then, of course, if you failed that and exhausted your remedies, you would go into federal court. So that's how I see it. Well, even if Nanette applies, I mean, regardless of heck, I mean, it's still an issue of whether the remedy that's pursued here was pursued diligently. I'm sorry? Whether the remedy that's pursued here was diligently enough pursued. I mean, that's the bottom line, no matter which train you get on. And I understand that. But I think that it was addressed, and I'm thinking that it was in Spencer, but my brain is missing this footnote or a short statement that addresses this particular issue by saying that, yes, even though there are questions – I mean, clearly, if the situation exists that somebody could challenge an infraction after they're released, and that could be, let's say, greater than whatever statute of limitations of any state, right, whether it's California two years, Washington three, so then you're extending it out. But the point made by the court is that very few prisoners would avail themselves of this remedy, and the reason is is because very few people that are incarcerated are going to sit or stand by while they feel that they are being held unjustly without doing something in the courts. And so as a practical matter, it is recognized that this is – this kind of issue is not an issue – because I thought about this issue, obviously, and it concerned me about how the court would respond to that. And so that would be my answer, because obviously if you're talking about a parole and you have a situation, for example, in a criminal case where you have to wait for the end of the case before you can file an 83 action, I mean, that can take years. I recently had a case that took eight years, including state and federal court, before it was overturned. So, you know, it's a darn good question, but I think that the practical matter is that most individuals will challenge if they know anything about it, pro se or otherwise, and I don't think that that's an issue. And the other thing is, is that, of course, we're talking about in the second part is how – But here he didn't. I mean, he was in – and I – from the time that he, as I understand it, knew that he wasn't released on his earned release date until he was actually released from prison, not – it was a couple years. Yes. And he could have filed a habeas in that time or a 1983 action, but didn't do either. Certainly. But is it required? And if you take a look, like I say, at Harvey Walter, it's not in terms of when the accrual date is in conjunction with Nanette. That does not require, as long as you meet – How does Harvey versus Walter have to do with the accrual date, aside from the fact that there's a Supreme Court case pending on – right now on exactly the issue in Harvey versus Walter. But what does it have to do with this case in terms of an accrual date? Because it doesn't accrue until he was released from DOC custody. Well, I see my time is up. All right. Go ahead. Thank you. Okay, that's easy. Good morning. May it please the Court. My name is Amanda Michaelbrink. I'm an assistant attorney general representing the respondent. The sole issue before the Court today is whether Mr. Mitchell timely filed his lawsuit. The plain answer to that is no. Mr. Mitchell was aware of his injuries six and a half years before he filed anything with any court. Statutory and equitable tolling are not applicable and have not extended to – and have not extended the statute of limitations for Mr. Mitchell. I have a factual question about how this whole system works. Okay. He – as I understand it, he was a sexual offender. And so he was not eligible as a matter of law for community custody, or he wasn't eligible on some factual basis. And I guess what I'm getting at was the decision made, I guess, in 97, that he wasn't going to be released from community custody. Was that a – was that what the decision was, that he wasn't going to be released from community custody, and there was a final decision made at that point? Or was it simply that he wasn't released? With individuals that are considered sexual offenders, they do have a requirement for community custody, and within DOC there are certain things that they have to do before they can be released to that community custody. But they can be. There's no rule against them being released. There's no – they – it's a permissive statute. It's not a mandatory release for those individuals. So there's the possibility that they may not be released because they have certain things that they need to do before they can be released. Okay. So how then – so was the decision made – was there a decision made in 1997 that he wasn't going to be released, or he just – or was there basically a two-year period through which he might have been released during that period, but he just wasn't? Unfortunately, we don't have the record developed enough to determine what exactly happened with Mr. Mitchell. I can tell you that in other cases that have involved similar issues, usually what according to DOC policy is that they have to submit addresses and there's an investigation process into whether or not that's an appropriate placement for these individuals. But then he might have come up with a different address. So the decision in 1997 wasn't final is what I'm really looking at. It wasn't determinative. Correct. So why would anything have accrued in 1997? Because he knew – he was aware of his injury on that day. He was aware – No, he wasn't. That's what I was just trying to establish, because it might have changed. It might have changed, but he did know that that was his earned early release date. That's what he put in his complaint as his release date. Right, but whether he was going to be held beyond it depended on whether he came up with a plan that was accepted. And if the first plan wasn't accepted, there might be a second one that might be accepted. Right. And unfortunately, we don't have that information to know what that was. Unfortunately, the information we have is just that he had an earned release date of – I believe his was March of 1998. So I can't say specifically what happened for Mr. Mitchell. So he knew he was going to be held beyond his earned release date, but he didn't know that that wouldn't – he wouldn't at some point be released within that two-year period. Correct. Okay. Mr. Mitchell did not file his lawsuit until six years after he had – after his earned release date and four years after he was released from prison. The fact that Mr. Mitchell had the opportunity to seek habeas relief while incarcerated and failed to do so does not further toll the statute of limitations for those two years while he had the ability to seek that relief. This Court has held that habeas corpus proceedings do not delay the accrual of a 1983 claim. The purpose of this is to be free from stale claims. This Court has also noted that this could potentially extend 1983 claims indefinitely as habeas petitions are not subject to a statute of limitations. And that was found in Bagley v. CMC, Real Estate, 923 F. 2nd, 758. Mr. Mitchell has also argued that the statute of limits are subject to a statute of limitations. What do you mean by that? They're subject to the statute of limitations in that they have until they're released from prison. Oh, I see. Well, not – not – not – It's not indefinite. They have until they're released from prison. So an individual that – potentially an individual that is in prison for life has that entire life time to file a habeas relief. Under Washington law? Not under Federal law. Well, I'm sorry. That – according to the Bagley v. CMC, that was just a statement that I found in that  Furthermore, Mr. Mitchell argues that the statute of limitations should be told because he was a pretrial civil detainee. There are two different ways that the statute of limitations can be told. One of them is by statutory exception, or the other is by if the court determines that it should be equitably – equitably told. RCW 4.16190 allows the statute of limitations to be told for individuals that are imprisoned on a criminal charge prior to sentencing. It does not allow for individuals – for the statute of limitations to be told for individuals that are waiting for civil commitment. Mr. Mitchell is essentially asking this Court to find that the statute of limitations should be equitably told due to his specific circumstances while he is waiting trial. He cites to Jones v. Blanas as the contention that it should be told. However, Jones is not directly on point to the Washington State statute for tolling. The Court focused on the specific conditions of Mr. Jones' confinement while he is waiting for civil commitment. They found that Mr. Jones was subject to more restrictive conditions than while he was in prison. Those factors are simply not present, nor have they been alleged in this matter. Furthermore, Mr. Mitchell was able to file his complaint at some point in 2004, and his conditions of his confinement didn't change from the day he entered the SEC to the date that he actually managed to file his complaint. Therefore, there's no reason for those – the statute of limitations to be told. Furthermore, Mr. Mitchell also argues that this case should be certified to the State law as not well settled, which is simply untrue. The State law test for certificate – or for tolling the statute of limitations is that the plaintiff must show that the defendant acted in bad faith, was deceptive, or made false assurances, and that the plaintiff acted with due diligence. None of these have been asserted. Mr. Mitchell had two years while he was in prison to find some – to file some sort of claim. As far as habeas relief goes, he failed to do so. He had another four years after he was released from prison to file some sort of claim, and he failed to do so. He is simply beyond the statute of limitations, and I'd ask this Court to please affirm the district court's ruling. Counsel, let me ask you the questions that Judge Berzon asked your opponent. Okay. You have not talked about Heck v. Humphrey. Is that because you believe it's not properly before us because it's not jurisdictional? I believe that it is – it hasn't been. And you didn't raise it. I did. I did. It was not raised below, and I don't believe that it is – although the district court did raise it in – I believe it was in Mr. Mitchell's case for the – in the report and recommendation dismissing the case. I don't believe it's necessary to go through the Heck analysis in order to make the determination in this case. But it would be if it were jurisdictional, and we don't seem to be able to get anybody to engage in that question. Is it waivable? Have you found law on whether it's waivable? No, I have not. Again, I would ask that this Court affirm the district court's ruling. Thank you. Mr. Kars. Your Honor, I had used those in my last ten minutes. Well, I'm assuming we're just spilling over. Okay. I'll be more than happy to. Now you're using up your next ten. Thank you, Your Honor. And one question. Is there any relevant factual difference between the two cases? Not that I can see, Your Honor. Okay. I looked through the – The time limit problems are essentially the same. That's what I see when I did the calculations, and I have them in front of me saying that, yes, it was under three years that they were both incarcerated in the Washington Department of Corrections. And then it looks like the commitment was eight months for Mr. Peckham and 39 months for Mr. Mitchell. And then 16 months Mr. Mitchell filed the lawsuit after that, and 34 months Mr. Peckham. I wanted to address the tolling issue just very briefly because, quite frankly, when I read the cases on equitable tolling, I look at Jones v. Blanas, you know, I don't see Washington case law as being all that clear. It seems like, on one hand, you have the Court of Appeals making decisions on equitable tolling and criminal actions. On the other hand, the Supreme Court says, well, we haven't decided that yet. My question is still the same. What difference does it make? Because even whether you include the Washington provision on criminal tolling for the civil purpose or not, no matter what else they may say, diligence remains an issue. Yes. So if one believes that it was not pursued diligently, it doesn't really make much of a difference whether the tolling law is or isn't, are or aren't. Yes. I understand your point, Your Honor. However, as a counterthought, I would suggest that, I mean, the question is, quite frankly, whether or not the criminal statute applies. If the criminal statute applies for whatever reason, and if the Washington courts, like they've done in, I guess, Ture with the post-conviction statute limitations applied it to civil commitment proceedings or, you know, other cases where they seem to, you know, apply certain criminal aspects to the civil proceedings. I mean, this is a complex area of law, obviously, and there seems to be a lot of flux. And the question then comes is, you know, is diligence really required? How would the Court rule? I don't know. I don't know how this Court will rule, obviously. And I'm not sure. I can understand what you're saying. Are you saying your equitable tolling argument, as I understand it, is not simply a general equitable tolling argument, but that the criminal pretrial detention provision should be transported over to this wholesale. Correct. So therefore, that's why diligence doesn't matter, because diligence doesn't matter there. Does diligence matter there?  No. So that period just comes out period. It's a plain statutory language that I think I said in the briefing. It was from 1854 or something, the Territorial Laws of Washington. And although it was changed in the 1990s to cut that point. Sure. And so your argument is that essentially we should just apply it not so much as an equitable rule with flux in it, but strictly as written, even though it doesn't apply to this as written. I think the question is the mechanism for application. And I guess because this Court has looked at equitable tolling, I mean, that is one mechanism that could apply the criminal tolling statute, pretrial detaining tolling statute, to the situation here where you have a civil detaining. So I'm using equitable tolling as a mechanism by which the Court can acknowledge the realities of the situation, which is a distinction without a difference whether you're in the Washington Department of Corrections or at the Special Commitment Center under the authority of the Department of Social and Health Services. I just want to make also to address an issue that was raised very quickly regarding requirement for release. I think this Court has to look carefully at the decision in In re Capello, the decision? Capello, in re Capello. It's in the briefing somewhere. Anyway, the point being is that until I think March 26, 1992, the courts in the State of Washington had the option of imposing a residence requirement or not for a certain class of sex offenders. After that, it was before it was an opt-in provision. After that, it was an opt-out provision. And of course, courts didn't opt out after that. But the question then comes is that if you had no residence requirement, then when does it accrue? So I don't know because I've made the argument, of course, in my supplemental briefing that it's a power situation. We have prisoners. They're powerless. I mean, it's not like a situation where if you have a policy applied in a discrimination case where you have a union fighting for you or something like that. So I'm trying to distinguish, obviously, this issue on the subject of continuing violation doctrine. So that's where that comes from. What is your response to your opposing counsel's statement that you failed to present any evidence that the government interfered with his ability to file sooner, to comply with the statute of limitations, that he was not denied access, that he was denied access to legal materials? You haven't demonstrated that, they claim. Or that there was some deception practice which prevented him from filing? Well, I certainly haven't found that. Was any evidence presented? I have not. I mean, quite frankly, this particular case, posture, has come on a motion to dismiss, and there was no evidence presented to show that this was indeed the case. But you argued equitable tolling. Yes. For the district court. Yes. And to come within that under Washington law, you have to show diligence. And apparently, at least some of the cases say, you have to show that somehow the State interfered with the ability to comply with the statute of limitations. Isn't that true? Well, that's the disagreement that I have with my distinguished counsel in a sense that, yes, the language does seem to state that, and yet the decisions and the decisions regarding SVP cases are all, you know, they're over certain areas. And that, I mean, the question I have really is, would a Washington court, for example, take a look at this particular situation and say, let's be fair, I mean, because equitable tolling is about equity, and say that it's you have a statute for people that are criminal pretrial detainees. Maybe that, you know, what is the issue of diligence? He diligently filed appropriately after the period of time that he was released and after his so I don't know. I mean, that's really the answer. I appreciate your question. I have a question, which is a little bit to the side of all this, but why was this people in pre-pre-prehearing detention for years? I thought the statute requires a trial within 45 days. Why were they sitting there? Well, quite frankly, I don't know if you've ever taken a look at these cases, but discovery runs anywhere from could run anywhere from 8,000 to 20,000 documents. You have, if it's a recent overt act, you have to, the state has to show a recent overt act, which then requires, could require many witnesses. They're very complex cases. And they have no obligation to do that before these people are released as opposed to afterwards. It sounds like a bizarre system. Well, I, don't get me started, but yes, and it's very complex, and you will find that there are people there that have been there for years and years and years. You know, it's easy if you're under. There's some sort of a probable cause hearing first? Yes, there is a probable cause hearing. And to substantiate that, of course, they get a psychologist who will say there's more likely or not there's potential for re-offense, et cetera. But this is a very common thing. I have talked to many people there that have been there for years without having their trial, including someone that I represented in a civil case. Why are your clients, or why were they in any better position to file these challenges that went back several years once they were determined to be committed under the sexual offender statute rather than previously? I guess I don't understand. They were in pretrial detention, so to speak. Then they were committed. Yes. So, I mean, your whole argument depends on somehow it's fair to not make them file during the whole period they were in pretrial detention, but it is fair to make them file now. Absolutely. But as a practical matter, why are they in any better position to do it now? Well, I mean. I mean, we're talking equity here. You have to demonstrate why the – I understand the statute, but the statute doesn't apply. So – as written. So why is it that the pretrial period had them in worse position to pursue their legal rights with respect to something that happened before the pretrial period than that? Yes. The only thing that I can suggest, and I know this to be the case, is that they're facing life, basically, the way it is right now. And I'm going to just finish the quick answer here, is that, with your permission, is that they're facing a life sentence. But nothing that happened back that they're challenging now is going to change that. I understand. But they're involved in the process of helping their case. And they are oftentimes very focused on the issue of their freedom. And so the issue of – But they're looking – they're essentially now looking for damages. Yes. For this period that is long past. Yes. Well, they feel that they were done wrong. Thank you. Okay. I take it you don't have anything to add, because this is really rebuttal. If you do, you know. I was just going to point out some minor factual differences. The only difference that – the factual differences that are present with Mr. Peckham versus Mr. Mitchell are that Mr. Peckham was actually released – his release date was seven and a half years prior to his filing the suit. And his release date was five and a half years prior to filing the suit. And, again, he failed to diligently pursue any sort of relief he might have had. Okay. Counsel, both of you, thank you for your arguments. The matter just argued will be submitted. And we'll next to your argument and change. Thank you.
judges: Alarcon, Rymer, Berzon